833 So.2d 1 (2002)
Tristan BETHEA et al.
v.
SPRINGHILL MEMORIAL HOSPITAL.
Springhill Memorial Hospital
v.
Tristan Bethea et al.
1001715 and 1001814.
Supreme Court of Alabama.
April 19, 2002.
*2 Peter F. Burns, of Burns, Cunningham, Mackey & Fillingim, P.C., Mobile; and G. Daniel Evans, Birmingham, for appellants/cross-appellees Tristan Bethea et al.
Philip H. Partridge, D. Scott Wright, and Thomas H. Nolan, Jr., of Brown, Hudgens, P.C., Mobile, for appellee/cross-appellant Springhill Memorial Hospital.
PER CURIAM.
Tristan Bethea and her mother, Angie Bethea (hereinafter collectively referred to as "the Betheas"),[1] seek review of a judgment entered on a jury verdict in favor of Springhill Memorial Hospital (hereinafter "Springhill"). The Betheas argue that they are entitled to a new trial because, they say, (1) the trial court improperly denied their challenge for cause during jury selection, and (2) the jurors relied on extraneous information in reaching their decision. Springhill filed a cross-appeal, arguing that a judgment as a matter of law should have been entered in Springhill's favor on Angela Bethea's individual claim for mental-anguish damages. We affirm the trial court's judgment for Springhill and dismiss Springhill's cross-appeal.
The Betheas sued Springhill, among others, for damages based on injuries allegedly sustained by Tristan during Tristan's birth at Springhill. Specifically, the Betheas alleged that Tristan suffered brain damage during the delivery process as a result of the improper use of the drug Oxytocin (which was also referred to as Pitocin at trial).[2]
During jury selection, the following colloquy took place between the court and a prospective juror, L.A.C.:
"THE COURT: .... Anybody kin to any of the lawyers whose names were mentioned? Have you ever done any business with them or have they done some legal services for you or do you know them in any way? All right. Ma'am. What's your name? Stand up, please.
"A JUROR: My name is [L.A.C.]
"THE COURT: All right. [L.A.C.] And who do you know?
"[POTENTIAL JUROR L.A.C.]: Mr. Hudgens.[3]

*3 "THE COURT: Mr. Hudgens, and how is that?
"PJ [L.A.C.]: He's a personal friend of my husband's family.
"THE COURT: All right. Is he your personal friend?
"PJ [L.A.C.]: Yes, sir.
"THE COURT: Well, you know what's coming next; don't you? The fact that Mr. Hudgens is your personal friend, would you still be able to render a fair and impartial verdict to this case?
"PJ [L.A.C.]: Yes, sir.
"THE COURT: All right. Now, you understand that Mr. Hudgens is on the defense side, you understand that?
"PJ [L.A.C.]: Right, yes, sir.
"THE COURT: That doesn't make you particularly biased in favor of the Defendant?
"PJ [L.A.C.]: Well, I know Mr. St. Clair[4] too.
"THE COURT: Ah. How do you know Mr. St. Clair?
"PJ [L.A.C.]: Through church and socially. Our children go to school together.
". . . .
"THE COURT: Okay. Would that, would you still be able to render a fair and impartial verdict in this case?
"PJ [L.A.C.]: I would like to think so.
"THE COURT: Okay. Well, that's fine. That's the way you are supposed to be, but you know, here you know Mr. Hudgens and you know Mr. St. Clair, sometimes that does make a difference. All right. Well, thank you."
Subsequently, counsel for the Betheas questioned each prospective juror extensively in an attempt to identify any possible partiality. Counsel for the Betheas did question L.A.C., but not regarding what effect, if any, her acquaintances with Mr. Hudgens and Mr. St. Clair might have on her ability to render a fair decision. Counsel for the Betheas concluded their examination with the following question:
"Is there anybody out here who because of your background you just think you should not sit on this case? That maybe I hadn't asked the question right, hadn't brought it out, that for whatever reason you think that you couldn't be fair to both sides?"
No prospective juror answered this question affirmatively.
Counsel for the Betheas requested that L.A.C. be struck from the jury for cause; the trial judge denied this request:
"THE COURT: All right. Any challenges for cause? Everybody seems to have been rehabilitated to me. I don't know if you leave them or not. The only problem I've got is with folks that can't stay a week, but anyway, I'll hear from you on any challenges for cause.
"MR. BURNS: Your Honor, I think number 24, [L.A.C.]
"THE COURT: Let me see, number 24. I just got the last names.
"MR. BURNS: [L.A.C].
"THE COURT: [L.A.C.], knows Mr. Hudgens, personal friend, knows Mr. St. Clair, but she went on and said that she could still render a fair and impartial verdict.
"MR. BURNS: Your Honor, what I wrote down is `I would like to think so.' That's what I wrote down in response to a question about being fair.

*4 "THE COURT: I don't think so. I think you're going to have plenty of strikes. I'm not going to strike her.
"MR. BURNS: Okay."
Counsel for the Betheas eventually used a peremptory strike to remove L.A.C. from the venire.
After a trial, the jury returned a verdict in favor of Springhill. Subsequently, the Betheas filed a motion for a new trial based upon, among other things, their assertion that the jury had improperly considered extraneous material during deliberations. In support of this new assertion, the Betheas filed an affidavit of Vera Milhouse, who served as one of the jurors. Ms. Milhouse's affidavit stated:
"I served as a member of the jury in the case of Bethea v. Springhill Memorial Hospital which was tried before Judge James Wood at the Mobile Circuit Court. After the jury retired to consider our verdict, I voted in favor of the [Betheas]. The majority of the jurors voted for [Springhill], but myself and three (3) male jurors voted for the [Betheas].
"During the deliberations, some of the other women jurors discussed their own personal knowledge about Pitocin from their own pregnancy and that of their daughter or relatives stating that they did not believe Pitocin could cause the child's problems because it had not happened in their own situations. They were using their own encounters rather than the evidence presented to us in the courtroom as the basis for these conclusions. This discussion clearly affected the jurors and the verdict. It became clear after this discussion that the men who had voted with me for the [Betheas] were swayed to vote for the defense. One of them discussed with me the fact that as a man he could not tell about Pitocin from any personal experience but since these other women jurors had such strong feelings from their own experience, he was persuaded to vote with them. Three men who had voted for the [Betheas] were swayed after this discussion and though I had consistently voted for the [Betheas] before that discussion, I agreed to go with the majority and told them to do what they wanted to do. I had no personal experience with Pitocin and I had initially voted for the [Betheas] in our deliberations. After the discussion in the jury room by some of the other women about their own experiences with Pitocin, I began to doubt my own conclusion and was persuaded to go along with their position. There was even speculation among the other jurors that perhaps Angie Bethea had used drugs even though there had been no evidence of that. When [the foreperson] read the verdict and stated `We, the jury, find in favor of the defendant,' I wanted to tell the Court about my position on the matter. Since we were not questioned at that point and were quickly dismissed by the Court, I did not have that opportunity, so I called to tell the judge that afternoon and spoke with the bailiff. During that conversation, I told the bailiff some of my concerns over how the verdict had been reached."
Springhill filed a motion to strike Milhouse's affidavit.[5] The trial court granted *5 Springhill's motion to strike and denied the Betheas' motion for a new trial. This appeal followed.

I.
The Betheas assert that they are entitled to a new trial based upon the trial court's refusal to strike L.A.C. for cause. Specifically, the Betheas argue that L.A.C.'s response to the question whether she could be fair and impartial"I would like to think so"was equivocal and therefore that the Betheas are entitled to a new trial because the trial court failed to assure L.A.C.'s impartiality. We disagree.
We recently discussed our standards governing the situations involving a trial court's ruling on challenges for cause in Dailey v. State, 828 So.2d 340 (Ala. 2001):
"We first consider whether the trial court erred in granting the State's challenge of K.K. for cause.
". . . .
"... We agree with [the] reasoning of the Court of Criminal Appeals; the trial court erred in granting the State's challenge of K.K. for cause. However, the Court of Criminal Appeals erred in failing to perform a harmless-error analysis before reversing the trial court's judgment.
"Rule 45, Ala. R.App. P., reads:
"`No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.'
"In Evans v. State, [794 So.2d 411 (Ala.2000) ], the trial court had granted the State's challenge of a veniremember for cause based upon the fact that she was married to defense counsel's uncle. The Court of Criminal Appeals held that the trial court had erred in granting the challenge and that Evans's constitutional right to a fair trial had been violated. Therefore, the Court of Criminal Appeals reversed Evans's convictions. This Court held that the trial court had erred in granting the State's challenge for cause, but held that the error was `harmless error' under Rule 45, Ala. R.App.P. We reasoned in Evans that the defendant's constitutional rights had not been violated:
"`Evans argues that the trial court's error in excusing [veniremember] E.F.W. violated his right to a trial by an impartial jury, a right guaranteed by Amendments 6 and 14 of the United States Constitution and § 6 of the Alabama Constitution. However, the United States Supreme Court has held that a defendant's federal right to an impartial jury was not automatically violated merely by an erroneous ruling on a challenge for cause. Ross v. Oklahoma, 487 U.S. 81, 87-88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); see also United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). As long as the jury that heard the case was impartial, the right guaranteed by *6 the United States Constitution was not violated. See Ross, 487 U.S. at 87-88, 108 S.Ct. 2273. This rule would also apply to § 6 of the Alabama Constitution, which gives the defendant the right to a trial "by an impartial jury of the county or district in which the offense was committed." The plain meaning of this language is that the defendant is entitled only to an impartial jury and that unless the defendant can show that a trial court's erroneous ruling during jury selection prevented the jury from being impartial, there is no violation of § 6.'
"794 So.2d at 414.
"Here, Dailey has made no showing that her right to an impartial jury was probably injuriously affected by the trial court's error in removing K.K. Therefore, we conclude that the trial court's error in removing K.K. was not reversible, because, even with the error, Dailey had a fair trial with an impartial jury. The judgment of the Court of Criminal Appeals is reversed and the case is remanded."
Dailey v. State, 828 So.2d at 342-44. Simply put, "[i]t is clear that in a civil case the party appealing from an adverse ruling on jury selection must prove not only that the trial court erred, but also that the error `has probably injuriously affected [that party's] substantial rights'" by forcing that party to try his case before a less-than-impartial jury. Evans v. State, 794 So.2d 411, 413 (Ala.2000) (quoting Rule 45, Ala. R.App. P.).
The application of a "harmless-error" analysis to a trial court's refusal to strike a juror for cause is not new to this Court; in fact, such an analysis was adopted as early as 1909:
"The appellant was convicted of the crime of murder in the second degree. While it was error to refuse to allow the defendant to challenge the juror C.S. Rhodes for cause, because of his having been on the jury which had tried another person jointly indicted with the defendant, yet it was error without injury, as the record shows that the defendant challenged said juror peremptorily, and that, when the jury was formed the defendant had not exhausted his right to peremptory challenges."
Turner v. State, 160 Ala. 55, 57, 49 So. 304, 305 (1909). However, in Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled on other grounds, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court stated, in dicta, that "[t]he denial or impairment of the right is reversible error without a showing of prejudice."[6] (Emphasis added.) *7 Some decisions of this Court as well as of the Alabama Court of Criminal Appeals reflect an adoption of this reasoning. See Dixon v. Hardey, 591 So.2d 3 (Ala. 1991); Knop v. McCain, 561 So.2d 229 (Ala.1989); Ex parte Rutledge, 523 So.2d 1118 (Ala.1988); Ex parte Beam, 512 So.2d 723 (Ala.1987); Uptain v. State, 534 So.2d 686, 688 (Ala.Crim.App.1988) (quoting Swain and citing Beam and Rutledge); Mason v. State, 536 So.2d 127, 129 (Ala. Crim.App.1988) (quoting Uptain.)
As noted in the language quoted above from Dailey, this Court has returned to the "harmless-error" analysis articulated in the Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), and Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), decisions. Because a defendant has no right to a perfect jury or a jury of his or her choice, but rather only to an "impartial" jury, see Ala. Const. 1901 § 6, we find the harmless-error analysis to be the proper method of assuring the recognition of that right.
In this instance, even if the Betheas could demonstrate that the trial court erred in not granting their request that L.A.C. be removed from the venire for cause (an issue we do not reach), they would need to show that its ruling somehow injured them by leaving them with a less-than-impartial jury. The Betheas do not proffer any evidence indicating that the jury that was eventually impaneled to hear this action was biased or partial. Therefore, the Betheas are not entitled to a new trial on this basis.[7]

II.
The Betheas also assert that they are entitled to a new trial based on the information in Ms. Milhouse's affidavit regarding the alleged use of extraneous information by the jury. We disagree, and we hold that her affidavit was properly stricken by the trial court.
Rule 606(b), Ala. R. Evid., provides, in pertinent part:
"[A] juror may not testify in impeachment of the verdict ... as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."
(Emphasis added.) With regard to the "extraneous prejudicial information" exception in Rule 606(b), we have recently noted that "`[t]he courts of this state have generally limited the scope of this exception to the visitation of a crime scene by a juror, the introduction of the definition of legal terms in the jury room, and [the reading of] concepts from general reference books.'" Lance, Inc. v. Ramanauskas, 731 So.2d 1204, 1214 (Ala.1999) (quoting with approval the trial court's order, which cited Jordan v. Brantley, 589 So.2d 680 (Ala.1991); Nichols v. Seaboard Coastline Ry., 341 So.2d 671 (Ala.1976); and Dawson v. State, 710 So.2d 467 (Ala.Crim. App.1996)).
*8 Even more recently, in Sharrief v. Gerlach, 798 So.2d 646 (Ala.2001), we held that affidavits containing "accounts of some jurors' discussions during deliberations" did not fall under the extraneous-information exception, because the alleged information did not come to the jury from some external authority or through some "process outside the scope of the trial":
"The plaintiffs misconceive the distinction, under Alabama law, between `extraneous facts,' the consideration of which by a jury or jurors may be sufficient to impeach a verdict, and the `debates and discussions of the jury,' which are protected from inquiry. This Court's cases provide examples of extraneous facts. This Court has determined that it is impermissible for jurors to define terms, particularly legal terms, by using a dictionary or encyclopedia. See Fulton v. Callahan, 621 So.2d 1235 (Ala.1993); Pearson v. Fomby, 688 So.2d 239 (Ala.1997). Another example of juror misconduct leading to the introduction of extraneous facts sufficient to impeach a jury verdict is an unauthorized visit by jurors to the scene of an automobile accident, Whitten v. Allstate Ins. Co., 447 So.2d 655 (Ala.1984), or to the scene of a crime, Dawson v. State, 710 So.2d 472 (Ala.1997).
"The problem characteristic in each of these cases is the extraneous nature of the fact introduced to or considered by the jury. The improper matter someone argues the jury considered must have been obtained by the jury or introduced to it by some process outside the scope of the trial. Otherwise, matters that the jurors bring up in their deliberations are simply not improper under Alabama law, because the law protects debates and discussions of jurors and statements they make while deliberating their decision. CSX Transp. v. Dansby, 659 So.2d 35 (Ala.1995). This Court has also noted that the debates and discussions of the jury, without regard to their propriety or lack thereof, are not extraneous facts that would provide an exception to the general rule of exclusion of juror affidavits to impeach the verdict. Weekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955).
"Nothing contained in the affidavits indicates the jury considered any extraneous facts. All the statements in the affidavits relate to evidence that was presented at trial or to information that was otherwise brought to the attention of the jury during the trial. The affidavits provide no evidence that the jury consulted any outside sources of information regarding the definition of `standard of care,' or regarding any other matter. Nothing in either of the affidavits indicates that the jury, or any particular juror, was influenced by any outside source. The trial court did not abuse its discretion in denying the plaintiffs' posttrial motions seeking discovery regarding the jury's deliberations. HealthTrust, Inc. v. Cantrell, 689 So.2d 822 (Ala.1997)."
Sharrief, 798 So.2d at 652-53 (emphasis added).
In accordance with these decisions, we hold that in order for information to come within the extraneous-information exception to Rule 606(b), the information must come to the jurors from some external authority or through some process outside the scope of the trial, either (1) during the trial or the jury's deliberations or (2) before the trial but for the purpose of influencing the particular trial. In this case, we hold that the alleged prejudicial informationpersonal experiences with the use of Pitocin in induced laboris not extraneous information under the exception to Rule 606(b). The information did not come to the jury from some external authority or through some process outside *9 the scope of the trial, as defined above; rather, it arose solely from within the "debates and discussions" of the jurors during the process of deliberating. Therefore, the trial court did not err in striking the affidavit and in denying the Betheas' motion for a new trial.
Based on the above, the judgment of the trial court is due to be affirmed. Given our affirmance of the trial court's judgment, we need not address, and therefore dismiss, Springhill's cross-appeal.
1001715AFFIRMED.
1001814CROSS-APPEAL DISMISSED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, and STUART, JJ., concur.
JOHNSTONE, HARWOOD, and WOODALL, JJ., concur in the rationale in part and concur in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
I concur in Part II (addressing the Betheas' claim that the jurors considered extraneous information) and in the judgment. I respectfully disagree, however, with the rationale on the challenge-for-cause issue in Part I.
In Part I, we are denying the plaintiffs relief on their claim that the trial court erred to reversal in denying their challenge for cause against prospective juror L.A.C. I concur in this result only because I conclude that the limited voir dire does not establish such a compelling ground for this challenge for cause that we could conclude that the trial judge abused his discretion in denying the challenge.
I disagree, however, with the rationale that an erroneous denial of a challenge for cause is not reversible in the absence of proof that the error has probably injuriously affected the challenging party's substantial rights "by forcing that party to try his case before a less-than-impartial jury." 833 So.2d at 6. The authorities cited by the main opinion in support of this holding are fundamentally distinguishable, and this holding is contrary to our precedents, which are unequivocally controlling. In each of Dailey v. State, 828 So.2d 340 (Ala.2001), and Evans v. State, 794 So.2d 411 (Ala.2000), cited as authority by the main opinion, the error consisted of granting the challenge for cause and eliminating the prospective juror from the venire. Erroneously removing an unbiased prospective juror, as in the two cited cases, is fundamentally different from erroneously keeping a biased prospective juror, who may then exert his bias on the case unless the victim of the bias spends a peremptory challenge to remove the biased prospective juror. The erroneous grant of the challenge for cause in each of these two cited cases did not relegate the aggrieved party to spending a peremptory challenge to remove a biased juror whom the trial court should have removed in response to a challenge for cause.
Our precedents are unequivocal that the erroneous denial of a challenge for cause is reversible because it infringes the challenging party's right to use his peremptory challenges on other jurors who are not subject to challenge for cause. See Dixon v. Hardey, 591 So.2d 3, 7 (Ala.1991); Knop v. McCain, 561 So.2d 229 (Ala.1989); Ex parte Rutledge, 523 So.2d 1118 (Ala.1988); Ex parte Beam, 512 So.2d 723, 724 (Ala. 1987); Mason v. State, 536 So.2d 127, 129 (Ala.Crim.App.1988); and Uptain v. State, 534 So.2d 686, 688 (Ala.Crim.App.1988).
"[T]he right [to peremptory challenges] is given in aid of the party's interest to secure a fair and impartial jury." Frazier v. United States, 335 U.S. 497, 505, 69 *10 S.Ct. 201, 93 L.Ed. 187 (1948). Peremptory challenges are "one state-created means to the constitutional end of an impartial jury and a fair trial." Georgia v. McCollum, 505 U.S. 42, 56, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). The Alabama Constitution of 1901, Art. I, § 6, guarantees a defendant the right to a trial "by an impartial jury of the county or district in which the offense was committed." Although neither the United States Constitution nor the Alabama Constitution requires peremptory challenges, the traditional right to peremptory challenges is "`one of the most important rights secured to the accused.'" Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (quoting Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894)). It is "`an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose.'" Swain v. Alabama, 380 U.S. at 219, 85 S.Ct. 824 (quoting Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892))(emphasis added).
"The function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise. In this way the peremptory satisfies the rule that `to perform its high function in the best way "justice must satisfy the appearance of justice."' Indeed the very availability of peremptories allows counsel to ascertain the possibility of bias through probing questions on the voir dire and facilitates the exercise of challenges for cause by removing the fear of incurring a juror's hostility through examination and challenge for cause....
"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable."
380 U.S. at 219-20, 85 S.Ct. 824 (citations omitted). Alabama law redresses the denial of a valid challenge for cause and the consequent relegation of the challenging party to the use of one of his peremptory challenges:
"`"The denial or impairment of the right [to peremptory challenges] is reversible error without a showing of prejudice."' Swain v. Alabama, 380 U.S. 202, 219 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965). Since the defendants were required to use peremptory challenges in order to eliminate the three venirepersons who had properly been challenged for cause, their total number of peremptories was effectively reduced by three. Tisdale [v. State, 30 Md.App. 334, 353 A.2d 653, 657 (1976) ]."
Mason v. State, 536 So.2d at 129, and Uptain v. State, 534 So.2d at 688. This rule is now state law, not dependent on the United States Constitution or on federal precedents.
"[A] State may confer procedural protections of liberty interests that extend beyond those minimally required by the Constitution of the United States. If a State does so, the minimal requirements of the Federal Constitution would not be controlling, and would not need to be identified in order to determine the legal rights and duties of persons within that State."
Mills v. Rogers, 457 U.S. 291, 300, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). "State courts, in determining the scope of rights *11 guaranteed by their own constitutions, ... may, in fact, provide more protection for private rights than the United States Constitution requires." Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 170 (1991). In interpreting state laws, Alabama courts may "provide greater safeguards" to persons than are provided by federal constitutional law. Gilbreath v. Wallace, 292 Ala. 267, 271, 292 So.2d 651, 654-55 (1974). Even though federal constitutional law may not require reversal for the erroneous denial of a valid challenge for cause, Alabama law does require reversal. Swain v. Alabama, Knop v. McCain, Ex parte Beam, Ex parte Rutledge, Uptain v. State, and Mason v. State, supra.
The erroneous denial of a challenge for cause relegates the challenging party to spending a peremptory challenge to remove the biased prospective juror and thereby deprives the challenging party of the opportunity to use that peremptory challenge for its purpose intended by law: the removal of a prospective juror not subject to a challenge for cause. The effect of the holding in the main opinion is that the erroneous denial of a challenge for cause is not reversible unless it causes a biased juror to remain on the jury after the challenging party has exhausted all of his peremptory challenges, including the one necessarily spent on removing the prospective juror who should have been removed by the trial court in response to the challenge for cause. If, however, the challenging party could prove that a remaining juror is biased, the challenging party would not need the spent peremptory challenge inasmuch as proof of such bias would constitute ground for another challenge for cause. Thus the burden imposed by the main opinion on the challenging party defies the very purpose of a peremptory challenge and essentially eliminates the peremptory challenge as an enforceable right.
HARWOOD, Justice (concurring in the rationale in part and concurring in the judgment).
I would hold that no error occurred in the denial of the Betheas' challenge for cause of prospective juror L.A.C.; therefore, I would not reach the harmless-error issue. Accordingly, I concur in the result as to Part I of the main opinion. I concur fully in Part II of the opinion.
WOODALL, J. (concurring in the rationale in part and concurring in the judgment).
I concur fully in Part II of the lead opinion. I concur in the result with respect to Part I of the lead opinion.
NOTES
[1] The plaintiffs in their notice of appeal styled this case "Tristan Bethea, a minor who sues by and through his father and next friend Herbert Bethea, and Herbert Bethea and Angela Bethea, individually v. Springhill Memorial Hospital." Herbert Bethea was voluntarily dismissed as a plaintiff and is not a party to this appeal.
[2] Oxytocin is used to induce labor or to speed up delivery.
[3] Mr. Hudgens is one of the attorneys representing Springhill.
[4] Mr. St. Clair is Springhill's administrator and served as Springhill's representative at trial.
[5] In support of its motion, Springhill filed affidavits of several other jurors, who all strongly disagreed with the assertions in Ms. Milhouse's affidavit. The affidavits filed by Springhill indicated (1) that a predeliberation vote was taken and that there were no votes for the Betheas (eight votes were for Springhill, and four jurors were undecided); (2) that while one of the jurors might have mentioned that she had had an induced labor, such personal experiences were not used in any way in making a final determination; (3) that there were several factors other than the use of Oxytocin that were determinative in the decision; and (4) that Ms. Milhouse never said anything about being persuaded or influenced by anything other than the evidence presented at trial.
[6] In United States v. Martinez-Salazar, 528 U.S. 304, 317 n. 4, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the Court explicitly recognized that this statement from Swain not only was dicta, but also was founded upon legal premises that had since fallen out of favor:

"Relying on language in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), as did the Court of Appeals in the decision below, Martinez-Salazar urges the Court to adopt a remedy of automatic reversal whenever a defendant's right to a certain number of peremptory challenges is substantially impaired. Brief for Respondent 29 (a `"denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice"') (quoting Swain, 380 U.S., at 219, 85 S.Ct. 824). Because we find no impairment, we do not decide in this case what the appropriate remedy for a substantial impairment would be. We note, however, that the oft-quoted language in Swain was not only unnecessary to the decision in that casebecause Swain did not address any claim that a defendant had been denied a peremptory challengebut was founded on a series of our early cases decided long before the adoption of harmless-error review."
[7] Given our holding, we need not, and do not, reach Springhill's argument that the Betheas' failure to question L.A.C. regarding her acquaintances with Mr. Hudgens and Mr. St. Clair waived their argument concerning the challenge for cause of potential juror L.A.C.