[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 648 
Charles Sharrief and Millie Sharrief, as administrators of the estate of Quanetta M. Buchannon, deceased, sued Dr. Rebecca Gerlach, Dr. Charles Giddens, and Jackson County Hospital, seeking compensatory and punitive damages on allegations of a wrongful death, in the defendants' providing medical care to Buchannon.
The trial court entered an "Order of Referral to Mediation." During mediation, the plaintiffs' settled their claims against Dr. Giddens and Jackson County Hospital; the court dismissed those defendants pursuant to a motion and joint stipulation for *Page 649 
dismissal. Although he was no longer a party to this case, Dr. Giddens was later a witness at trial.
Trial of the plaintiffs' claims against Dr. Gerlach began on September 27, 1999. When Dr. Gerlach was called by the plaintiffs as their first witness, she ran out of the courtroom. The trial judge offered the plaintiffs the option of continuing the trial in Dr. Gerlach's absence, but they declined to do so. The trial court then declared a mistrial. The plaintiffs then made a motion to tax costs to the defendant, but the trial court denied the motion, on the rationale that the plaintiffs had refused to proceed with the trial in the defendant's absence.
A second trial began on January 24, 2000. On January 27, 2000, the jury returned a verdict for Dr. Gerlach. The trial court entered a judgment based on that verdict. The plaintiffs, without first informing the trial court, subpoenaed the jurors for depositions, based on a suspicion that juror misconduct had occurred during the trial. When the trial court became aware of the subpoenas, it entered an order quashing them. The plaintiffs then filed a "Motion to Alter, Amend, or Vacate" the order quashing the subpoenas, or in the alternative, a "Motion to Take Depositions of Jurors" and a "Motion for Enlargement of Time." The plaintiffs also filed a "Motion to Vacate the Judgment," a "Motion for a New Trial," a "Motion for Post Judgment Hearing," and a "Renewal of Motion to Take Deposition Testimony of Jurors." In response, Dr. Gerlach filed a "Motion for Protective Order" and a "Motion to Strike Affidavits of Mr. Sharrief and Jurors." The trial court heard arguments on all the motions at the same time; it denied all of the plaintiffs' motions, and granted all of Dr. Gerlach's motions.
The plaintiffs appealed. They make a number of disparate arguments; we summarize them into four basic arguments: (1) that the trial court erred in denying their motion to vacate the judgment, or, in the alternative, for a new trial, because, they contend, the jury verdict was plainly and palpably wrong; (2) that the trial court committed reversible error by denying the plaintiffs' posttrial motions concerning discovery regarding jury deliberations; (3) that the trial court committed reversible errors during the trial; and (4) that the trial court erred in denying their motion to tax costs to Dr. Gerlach after the first trial had ended.[1]
The record shows that Buchannon, age 19, was brought to the Jackson County Hospital emergency room at 9:05 p.m. on July 2, 1993. She had been suffering from vomiting, nausea, and diarrhea for three days. Dr. Gerlach, an emergency-room physician, obtained Buchannon's medical history and examined her. Buchannon's medical history showed that she had delivered a child by caesarean section on June 27, 1993, at Hellen Keller Hospital in Muscle Shoals. The baby had been delivered by Dr. Jenny Gapultoes. (Dr. Gapultoes and Hellen Keller Hospital were not involved in this case.) Dr. Gerlach's examination indicated that Buchannon was suffering from endometritis, an infection of the uterus, resulting from the caesarean section performed five days earlier. Dr. Gerlach then telephoned Dr. Giddens, the obstetrician-gynecologist ("Ob/Gyn") on call for Jackson County Hospital that *Page 650 
night, to discuss the case. Dr. Giddens had also been Buchannon's Ob/Gyn up until two weeks before the delivery, but because Dr. Gapultoes had delivered Buchannon's baby, Dr. Giddens was no longer considered her attending physician. Dr. Gerlach informed Dr. Giddens of Buchannon's condition and of her test results, informed him that Buchannon had requested that he be present, and asked him to come in on Buchannon's behalf. Dr. Giddens declined to come to the emergency room. Dr. Gerlach then advised Dr. Giddens that her recommended course of treatment would include a shot of Rocephin,[2] 1 gram, by intramuscular injection, and a prescription of Doxycycline.[3] Dr. Giddens concurred with the recommended course of treatment. Dr. Gerlach further proposed that Buchannon be released and that she follow up with an Ob/Gyn within a few days. Dr. Gerlach then asked Dr. Giddens to do a "follow-up" examination with Buchannon in 2-4 days, but he declined that request, recommending instead that Buchannon be instructed to return to the physician who had delivered her baby. Dr. Giddens then approved Dr. Gerlach's recommendations for treatment, and that treatment was administered. Buchannon was released from the hospital at 10:45 p.m. The next morning, Buchannon became unconscious and unresponsive; she was rushed by ambulance to Scottsboro Medical Center. On July 3, 1993 at 7:17 a.m., Buchannon was pronounced dead. The official cause of her death was septic shock due to endometritis due to caesarean section.
 I. The Verdict and the Denial of the Plaintiffs' Postjudgment Motions
We first consider whether the trial court erred in denying the plaintiffs' motion for a new trial. The plaintiffs based that motion on the argument that the jury's verdict was not supported by the evidence.
 "[W]hen the evidence meets the `sufficiency' test, jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for new trial. Therefore, a judgment based upon a jury verdict and sustained by the denial of a post-judgment motion for a new trial, will not be reversed on a weight-of-the-evidence ground unless it is `plainly and palpably' wrong. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987). See, also, Jawad v. Granade, 497 So.2d 471 (Ala. 1986)."
Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162-63 (Ala. 1988).
Thus, this Court will reverse the trial court's denial of the plaintiffs' motion for a new trial only if this Court concludes that the verdict was plainly and palpably wrong. Generally, in order to prove liability in a medical-malpractice case, the plaintiff must show (1) the appropriate standard of care for the treatment supplied by the defendant health-care provider, (2) a deviation from that standard of care by the defendant, and (3) a proximate causal connection between the injury alleged by the plaintiff and the defendant's breach of the standard of care. Looney v. Davis, 721 So.2d 152 (Ala. 1998). The plaintiffs presented the testimony of Dr. William E. Garrett, assistant professor of surgery at Meharry Medical College. Dr. Garrett testified that Dr. Gerlach's examination and treatment of Buchannon was below the standard of care. However, Dr. Sherry *Page 651 
Squires, associate medical director of the emergency department at Huntsville Hospital, testifying as an expert on behalf of Dr. Gerlach, stated that Dr. Gerlach's treatment of Buchannon met the standard of care. The resolution of conflicts in the evidence rests solely with the trier of fact, in this case, the jury. Jones v. Beltazar, 658 So.2d 420
(Ala. 1995); James v. Woolley, 523 So.2d 110, 112 (Ala. 1988).
The record contains substantial evidence to support the jury verdict; thus, we must conclude that the verdict was not plainly and palpably wrong. Stokes v. Long-Lewis Ford, Inc., 549 So.2d 51, 52 (Ala. 1989);Merrell v. Joe Bullard Oldsmobile, Inc., 529 So.2d 943, 946 (Ala. 1988). The trial court did not err in denying the plaintiffs' motion for a new trial.
 II. Posttrial Motions Concerning Discovery Regarding Jury Deliberations
We next consider the plaintiffs' argument that the trial court erred in denying their posttrial motions seeking discovery regarding the jury's deliberations. These motions included a motion to subpoena jurors, a motion to vacate the order quashing the juror subpoenas, a motion to take juror depositions, a motion for enlargement of time to take juror depositions, and a motion renewing the plaintiffs' motion to take depositions, affidavits, and oral testimony of jurors. Matters concerning discovery pending appeal are within the trial court's discretion. Rule 27(b), Ala.R.Civ.P. "[R]elief under Rule 27 is discretionary with the trial court, and a trial court's ruling on a Rule 27 petition will not be reversed in the absence of an abuse of discretion." Ex parte Anderson,644 So.2d 961, 964 (Ala. 1994). Even if this CQFourt viewed these subpoena requests as coming within the ambit of Rule 30, Ala.R.Civ.P., the abuse-of-discretion standard would still apply. Home Ins. Co. v. Rice,585 So.2d 859, 862 (Ala. 1991).
After the trial, the plaintiffs had the trial-court clerk issue subpoenas to the jurors, without having gotten the approval of the trial court. In pertinent part, the trial court's order quashing the subpoenas stated:
 "The plaintiffs' attorney failed to comply with Rule 27 of the Alabama Rules of Civil Procedure for the taking of the depositions of witnesses pending appeal or before the taking of an appeal if the time therefor has not expired. The plaintiffs filed no motion with the court for authorization to take the depositions. Furthermore, the witnesses subpoenaed by the plaintiffs were jurors and the court is mindful of the special rules of law that apply to the testimony of jurors and policy considerations for these rules of law."
All of the plaintiffs' arguments concerning posttrial discovery regarding the jury's deliberations are based on three affidavits that had been taken before the trial court quashed the subpoenas. The first was the affidavit of Charles Sharrief, Buchannon's father (who also is one of the plaintiffs). Sharrief's affidavit contains a list of statements made to him by some of the jurors after the trial. The trial court found that Mr. Sharrief's affidavit was comprised completely of "hearsay," as that term is defined by Rule 802, Ala. R. Evid. The Court notes that the plaintiffs have not directly challenged, by citation to any authority, the propriety of the trial court's order striking the affidavit of Sharrief on the basis that it contained nothing but hearsay. See Rule 28(a)(5) Ala.R.App.P. Hearsay evidence is not admissible in support of a motion for a new trial, and a new trial will not be granted on the basis of such evidence. Jefferson County v. Kellum, 630 So.2d 426, 427 (Ala. 1993). We *Page 652 
conclude that the trial court did not abuse its discretion by refusing to allow Charles Sharrief's affidavit to support the issuance of subpoenas to individual jurors.
Affidavits were also obtained from two of the jurors, S. and H. Their affidavits contain accounts of some jurors' discussions during deliberations. Rule 606(b), Ala. R. Evid., reads:
 "(b) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify in impeachment of the verdict or indictment as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. Nothing herein precludes a juror from testifying in support of a verdict or indictment."
This Court has stated:
 "Generally, affidavits are inadmissible to impeach a jury's verdict. An affidavit showing that extraneous facts influenced the jury's deliberations is admissible; however, affidavits concerning `the debates and discussions of the case by the jury while deliberating thereon' do not fall with this exception."
HealthTrust, Inc. v. Cantrell, 689 So.2d 822, 828 (Ala. 1997). See also
Ala. R. Evid. 606(b); this rule is substantially similar to Rule 606(b), Fed.R.Evid. In Peveto v. Sears, Roebuck Co., 807 F.2d 486, 489 (5th Cir. 1987), the United States Court of Appeals for the Fifth Circuit held that "by implementing Rule 606(b), Congress has made the policy decision that the social costs of such error are outweighed by the need for finality to litigation." The Seventh Circuit has held that Rule 606(b) is designed "to protect the judicial process from efforts to undermine verdicts by scrutinizing the jurors' thoughts and deliberations." UnitedStates v. Ford, 840 F.2d 460, 465 (7th Cir. 1988). Other courts of appeals for the federal circuits have stated that Rule 606(b) promotes "free and uninhibited discourse during deliberations." Attridge v.Cencorp Div. of Dover Techs. Int'l, Inc., 836 F.2d 113, 116 (2d Cir. 1987); Maldonado v. Missouri Pac. Ry., 798 F.2d 764 (5th Cir. 1986).
The plaintiffs misconceive the distinction, under Alabama law, between "extraneous facts," the consideration of which by a jury or jurors may be sufficient to impeach a verdict, and the "debates and discussions of the jury," which are protected from inquiry. This Court's cases provide examples of extraneous facts. This Court has determined that it is impermissible for jurors to define terms, particularly legal terms, by using a dictionary or encyclopedia. See Fulton v. Callahan, 621 So.2d 1235
(Ala. 1993); Pearson v. Fomby, 688 So.2d 239 (Ala. 1997). Another example of juror misconduct leading to the introduction of extraneous facts sufficient to impeach a jury verdict is an unauthorized visit by jurors to the scene of an automobile accident, Whitten v. Allstate Ins. Co.,447 So.2d 655 (Ala. 1984), or to the scene of a crime, Dawson v. State,710 So.2d 472 (Ala. 1997).
The problem characteristic in each of these cases is the extraneous nature *Page 653 
of the fact introduced to or considered by the jury. The improper matter someone argues the jury considered must have been obtained by the jury or introduced to it by some process outside the scope of the trial. Otherwise, matters that the jurors bring up in their deliberations are simply not improper under Alabama law, because the law protects debates and discussions of jurors and statements they make while deliberating their decision. CSX Transp. v. Dansby, 659 So.2d 35 (Ala. 1995). This Court has also noted that the debates and discussions of the jury, without regard to their propriety or lack thereof, are not extraneous facts that would provide an exception to the general rule of exclusion of juror affidavits to impeach the verdict. Weekley v. Horn, 263 Ala. 364,82 So.2d 341 (1955).
Nothing contained in the affidavits indicates the jury considered any extraneous facts. All the statements in the affidavits relate to evidence that was presented at trial or to information that was otherwise brought to the attention of the jury during the trial. The affidavits provide no evidence that the jury consulted any outside sources of information regarding the definition of "standard of care," or regarding any other matter. Nothing in either of the affidavits indicates that the jury, or any particular juror, was influenced by any outside source. The trial court did not abuse its discretion in denying the plaintiffs' posttrial motions seeking discovery regarding the jury's deliberations.HealthTrust, Inc. v. Cantrell, 689 So.2d 822 (Ala. 1997).
 III. Alleged Errors During Trial
The plaintiffs argue that the trial court erred in overruling their objection made pursuant to Batson v. Kentucky, 476 U.S. 79, (1986), to the defendant's striking all but three of the women on the venire. The plaintiffs' also argue that they made an objection to the composition of the jury and a Batson objection to the striking of the one black member of the venire, but we have found no such objections in the record.
We first address the plaintiffs' claim that Dr. Gerlach violated the principles of Batson by using 7 of her 10 peremptory strikes against women. Because the plaintiffs did not object to the striking of the sole black juror, no other Batson argument has been preserved for our review.Cone Bldrs., Inc. v. Kulesus, 585 So.2d 1284 (Ala. 1991); Bruner v.Cawthon, 681 So.2d 161 (Ala.Civ.App. 1995). A trial court's ruling on aBatson objection is entitled to great deference, and we will not reverse a judgment because of such a ruling unless it is clearly erroneous. Exparte Branch, 526 So.2d 609 (Ala. 1987). In Batson, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a prosecutor in a criminal case from exercising peremptory strikes to remove black potential jurors from a black defendant's jury solely on the basis of their race. In Edmonson v. Leesville Concrete Co., 500 U.S. 614, (1991), the United States Supreme Court extended the Batson principles to civil cases. "The burden of persuasion is initially on the party alleging a discriminatory use of peremptory challenges to establish a prima facie case of discrimination." Thomas v. Diversified Contractors, Inc.,578 So.2d 1254, 1255 (Ala. 1991). In J.E.B. v. Alabama, 511 U.S. 127, (1994), the United States Supreme Court further extended Batson to gender-based strikes. "Only after a prima facie showing of discrimination has been established is a trial court under a duty to require an opposing party to provide *Page 654 
[gender-]neutral reasons for his peremptory strikes. Thomas at 1255.
The following exchange took place at trial:
 MS. CAFFEY: "Your Honor, according to my calculations of the thirty-six potential jurors, Plaintiffs are left with either two or three women; and we would submit for the Court's consideration that three female jurors — that the striking of the women was done in a sexually biased manner in order to exclude mothers from the jury, and they struck some women but was based upon responses that were given during the jury voir dire [sic]; and we showed that they might be biased in the case, such as, the inability to award a large sum of money, and two or three of them indicated — well, one indicated that she would not be able to follow the Court's jury instructions and other indications like that. And, also, the Plaintiffs struck two jurors who indicated a knowledge and relationship with Dr. Gerlach as a result of their employment with the Jackson County Hospital, and considering that there would be some information involving the Jackson County Hospital and the fact that they were a Defendant in this case, those jurors were struck because of their potential bias. And that would be jurors V. and M. Juror W. indicated — well, we didn't strike M., that would be V., but Juror W. indicated that — I believe she indicated that she did not believe that she could be unbiased in this case, and we contend that the three jurors — well, first of all, that women are a representative group in the Jackson County community and that three female jurors out of a potential thirty-six would certainly constitute less than the percentage of women in the community, and also, it's less than a reasonable percentage of jurors that are left on the jury; and that's one-third of the jury.
 MR. KEY [defense attorney]: "Is that a prima facie case, Your Honor?
THE COURT: "Are you saying it is?
MR. KEY: "I'm saying it is not.
THE COURT: "Well, what are your grounds in that regard?
 MR. KEY: "Judge, we can give a reason for every strike that we made, but the point is that we had ten strikes, and how many women are left on the jury?
THE COURT: "Three.
 MR. KEY: "Well, I'll say this. It's very unusual because it seems like that the last forty cases that I've tried, it's been about eight to three female; but, you know, there's no — I just don't see that there's any prima facie case here based on — you do have three women on the jury; and unless we're called to show gender-neutral reasons, then that's as far as I can go because I just don't see it.
 MS. CAFFEY: "Well, you struck seven of the female jurors, none of whom gave any indication of being connected with any of the parties.
 MR. KEY: "Well, for instance, the last strike, she indicated that she had been treated for diarrhea and vomiting and throwing up and had been put on IVs within four hours; and that's what they're saying that we should've done, and we've got reasons. And if we're forced to go back and reconstruct them, then we can, but —
 THE COURT: "Well, the Court rules that the Plaintiff [sic] has not made a prima facie case of discrimination in regard to gender. All right; anything further?
 MS. CAFFEY: "Your honor, my understanding of the law is that I would have to show that the group would be a representative *Page 655 
group in the community and that the defendants abused strikes in a manner . . . which left the number of jurors on the jury in this representative group less than the percentage of that group in the community; and I've clearly shown that. I have also offered the Court an explanation insofar as the striking of female jurors by the Plaintiffs and have shown sex-neutral reasons; and the Defendant has indicated that they would have to put together some reasons for the striking, and —
 THE COURT: "Well, that was not my understanding of the statement made by defense counsel. All right; that's my ruling. Do you have anything further?
MS. CAFFEY: "No, Your Honor."
The plaintiffs' only objection regarding the defendant's strikes of women, if it can be characterized as an objection, was to the fact that only three women were left on the jury. However, "`"[I]t is important that the defendant come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case"' of . . . discrimination." McElemore v. State, 798 So.2d 693, 696
(Ala.Crim.App. 2000) (quoting Mitchell v. State, 579 So.2d 45,48 (Ala.Crim.App. 1991), in turn quoting United States v. Moore,895 F.2d 484, 485 (8th Cir. 1990)). Based on the record, we conclude that the plaintiffs did not present a prima facie case of improper strikes on the basis of gender. In Ex parte Trawick, 698 So.2d 162
(Ala. 1997), this Court reasoned:
 "Trawick has offered no evidence that the female veniremembers shared only the characteristics of gender, that anything in the type or manner of the prosecutor's statements or questions during the extensive voir dire indicated an intent to discriminate against female jurors, that there was a lack of meaningful voir dire directed at the female jurors, or that female jurors and male jurors were treated differently. He has offered no evidence that the prosecutor had a history of using peremptory challenges in a manner that discriminated against veniremembers of either gender. Instead, Trawick has merely emphasized that the State used many of its strikes to remove women from the venire. Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination."
698 So.2d at 168. The reasoning of Trawick applies here. We have reviewed the trial transcript, and our review indicates the plaintiffs presented nothing to show a prima facie case of gender discrimination. Therefore, the trial court was not required to have the defense provide gender-neutral reasons for its peremptory strikes. We conclude that the trial court acted within its discretion in denying the plaintiffs'Batson motion.
The plaintiffs also argue that the trial court erred in excluding their Exhibit 5 ("Defendant's Medical Record" annotated by Dr. William Garrett during trial) and their Exhibit 7 (pamphlets on Rocephin and Doxycycline). However, the plaintiffs made no objections at trial to the exclusion of these exhibits, and this Court will not consider objections to the exclusion of evidence that were not raised at trial. Zielke v.AmSouth Bank, N.A. 703 So.2d 354, 361 (Ala.Civ.App. 1996); Bolen v.Hoven, 143 Ala. 652, 39 So. 379 (1905). We note further that the plaintiffs' brief contains no citations to authority supporting their contentions. See Rule 28(a)(5), Ala.R.App.P.; McLemore v. Fleming,604 So.2d 353 (Ala. 1992). *Page 656 
The judgment of the trial court is affirmed.
AFFIRMED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] The Court will not address this fourth issue, because the plaintiffs' brief contains no citations to authority supporting their contentions. Rule 28(a)(5), Ala.R.App.P., specifically requires an appellant to present the appellate court with citations to authorities supporting the appellant's contentions. When an appellant fails to comply with Rule 28(a)(5), Ala.R.App.P., this Court may affirm the ruling the appellant is complaining of. McLemore v. Fleming, 604 So.2d 353 (Ala. 1992).
[2] Rocephin is a sterile, semisynthetic, broad-spectrum cephalosporin antibiotic for intravenous or intramuscular administration. Physicians'Desk Reference 2765 (55th ed. 2001).
[3] Doxycycline is a broad-spectrum tetracycline antibiotic used against a wide variety of bacterial infections. Physicians' DeskReference 2254 (55th ed. 2001).