[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
Jimmy Day Plumbing Heating, Inc. ("Day"), appeals from a judgment for Brian Smith in Smith's personal-injury action against Day. We affirm.
This case arises from a motor-vehicle accident that occurred on April 18, 2003. On that date, Smith, who was then 21 years old, was operating a motorcycle on a public road. Alan Nelson, who was driving a pickup truck in the line and scope of his employment with Day, entered that roadway from a driveway and failed to yield the right-of-way to Smith's motorcycle as it approached the driveway. Nelson claimed that as he approached the roadway from the driveway his vision was obscured by a tree and that Smith was traveling at a high rate of speed. As the result of Nelson's failure to yield the right-of-way, the motorcycle and the truck collided, causing Smith to suffer serious and permanent injuries.
Smith sued Day in the Montgomery Circuit Court. In March 2006, a jury returned a verdict for Smith, awarding him compensatory damages of $1.5 million. Day filed postjudgment motions, which the trial court denied, and Day appealed. On appeal, Day contends that it is entitled to a new trial, or, in the alternative, a substantial remittitur. We disagree.
 I.
First, Day alleges that a juror's "failure to disclose his prior similar lawsuit resulted in probable prejudice to [it], requiring *Page 4 
a new trial." Day's brief, at 18. The juror Day refers to is T.C. Before voir dire examination, T.C. completed a juror questionnaire, indicating in response to one of the questions that he had never sued anyone. During voir dire, the prospective jurors were asked whether any of them had ever filed a lawsuit, and T.C. remained silent. T.C. served on the jury that returned the verdict for Smith.
After the verdict was returned, Day filed a motion for a new trial based, in pertinent part, on T.C.'s failure to disclose the fact that he had filed a lawsuit. Attached to the motion was a copy of a complaint filed by T.C. in the Montgomery Circuit Court on November 18, 1997. In the complaint, T.C. sought damages for injuries allegedly resulting from an accident that occurred on July 31, 1997. According to the complaint, T.C. "was riding a bicycle . . . when he was struck by a vehicle driven by the [defendant]." Also attached to the motion for a new trial was a copy of the jury verdict returned in T.C.'s case on July 16, 2001, awarding T.C. damages in the amount of $2,800.
Included with Day's motion for a new trial was a copy of the traffic-accident report regarding the accident in which T.C. had been involved on July 31, 1997. According to the report, T.C.'s bicycle was struck by an automobile as the driver of the automobile pulled away from a stop sign and approached the edge of the intersecting highway. The report indicates that both T.C., who appears to have been traveling on a sidewalk, and the automobile, which had not yet entered the intersection, were traveling at approximately two miles per hour. Further, the report shows that T.C.'s bicycle was not disabled and that T.C. suffered no visible injury. However, according to the report, T.C. complained of pain and was taken to a hospital in a private vehicle.
The trial court denied Day's motion for a new trial. Unless we conclude that the trial court exceeded the broad scope of its discretion in denying Day's motion, we must affirm.
 "`While we agree . . . that a juror's silence during voir dire could be a basis for granting a new trial, we must stress that the initial decision on this issue is within the trial court's sound discretion. Hayes v. Boykin, 271 Ala. 588, 126 So.2d 91
(1960). Further, the trial court's decision on this matter will not be disturbed on appeal unless the appellant establishes that the decision was arbitrarily entered into or was clearly erroneous.'
 "Carter v. Henderson, 598 So.2d 1350, 1354
(Ala. 1992).
 "`The proper inquiry on a motion for a new trial based on improper or non-existent responses to voir dire questions is whether the response, or the lack of response, resulted in probable prejudice to the movant. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970). Not every failure of a prospective juror to respond correctly to a voir dire question will entitle the losing party to a new trial. Wallace v. Campbell, 475 So.2d 521 (Ala. 1985).
 "`The determination of whether the complaining party was prejudiced by a juror's failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Freeman, supra."
 "Union Mortgage Co. v. Barlow, 595 So.2d 1335, 1342 (Ala. 1992)."
Holly v. Huntsville Hosp., 925 So.2d 160, 162
(Ala. 2005). Our review is limited, because "[t]he trial court is in the best position to determine whether there was *Page 5 
probable prejudice as a, result of a juror's failure to respond to questions during voir dire." Land Assocs., Inc. v.Simmons, 562 So.2d 140, 149 (Ala. 1989).
In determining whether a juror's silence resulted in probable prejudice to the movant, the trial court is entitled to consider a broad range of factors.
 "Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about."
Freeman v. Hall, 286 Ala. 161, 167, 238 So.2d 330,336 (1970). As Day correctly notes, "[t]he Freeman
factors have never been presented as either an exclusive or mandatory list." Day's brief, at 23.
In the context of a juror's failure to disclose requested information, "a material fact [is] `"one which an attorney[,] acting as a reasonably competent attorney, would consider important in making the decision whether or not to excuse a prospective juror."'" Conference America, Inc. v.Telecommunications Coop. Network, Inc., 885 So.2d 772, 777
(Ala. 2003) (quoting Gold Kist v. Brown, 495 So.2d 540,545 (Ala. 1986)). In considering the materiality of a fact, the court may consider "the obvious tendency of the true facts to bias the juror," as well as "direct testimony of trial counsel that the true facts would have prompted a challenge against the juror." Ex parte Dobyne, 805 So.2d 763, 773 (Ala. 2001).
Day argues that "what is perhaps the most crucialFreeman factor — materiality — was established without doubt." Day's brief, at 20. We disagree.
According to Day, "the existence of [T.C.'s] prior lawsuit establishes an `obvious tendency of the true facts to bias the juror.'" This is so, according to Day, because T.C.'s "lawsuit . . . involved facts that were strikingly similar to the instant case." Day's brief, at 22 (emphasis added). However, the trial court, acting within its discretion, could have concluded that Day had not offered convincing evidence in support of these allegations.
It is true that T.C., like Smith, was struck by a vehicle that was entering a roadway from a side street. Day argues that "[the officer's accident-report diagram] also shows that the car in [T.C.'s] case would have emerged from the intersecting street from behind a vision obstruction — a hedgerow — at the time it collided with [T.C.'s] bicycle, just as it [was] alleged here that a tree also had obscured [Nelson's] vision." Day's brief, at 22. However, this argument is purely speculative. Although the diagram of T.C.'s accident reveals the presence of a hedgerow, its dimensions are not indicated, and there is no factual basis for a reasonable inference that the hedgerow actually, or even allegedly, obstructed the view of the operator of the vehicle that struck T.C.'s bicycle.
Day also argues:
 "No reasonable lawyer would have allowed [T.C.] to sit as a juror hearing an automobile accident case involving an intersection collision with a motorcycle when [T.C.] previously had been the plaintiff in an automobile accident case involving an intersection collision with a bicycle — especially in view of the fact that the jury in [T.C.'s] case was not particularly generous, allowing for only $2,800 in damages. Given these facts, any reasonable lawyer would have had to regard juror [T.C.] as particularly *Page 6 
susceptible to an exaggerated sympathy for plaintiff Brian Smith's case, not to mention outright bias. Indeed, any reasonable lawyer would have had to consider whether [T.C.] suffered from some hidden resentment resulting from the limited award he received, a resentment that would incline him to `right the wrong' by making sure that Smith obtained a more generous recovery in the instant case."
Day's brief, at 22-23. The trial court, acting within its discretion, could have concluded that arguments such as these are rankly speculative and overlook substantial differences between T.C.'s accident and Smith's accident.
As previously stated, the accident report indicated that T.C. suffered no visible injury as a result of the accident. Day offered no evidence concerning T.C.'s injuries and the damages he sought; therefore, there is no factual basis for Day's allegation that "the jury in [T.C.'s] case was not particularly generous." Further, Day offered no testimony from T.C.; consequently, there is no factual basis for the contention that T.C. likely had "some hidden resentment" resulting from the verdict in his favor.
Significant factual differences between the two accidents are apparent. While Day argued that Smith was traveling approximately 65-70 miles per hour as he approached the point at which the accident occurred, it appears that T.C. was traveling approximately only two miles per hour at the time of his accident. Further, while T.C. approached the point of impact from a sidewalk, Smith was traveling on a public roadway. Also, while T.C.'s accident involved very little property damage and only minor injuries, Smith's accident involved a substantial impact and resulted in multiple serious injuries.[1]
Day also argues that T.C.'s "lawsuit was in no way `temporally remote'" from his jury service in this case. Day's brief, at 24. However, Day cites no relevant Alabama authority as to what constitutes temporal remoteness in a case such as this. The trial court, in the exercise of its discretion, was entitled to consider the length of time between the trial of this case in March 2006 and T.C.'s accident in July 1997, in addition to the length of time between the trial of this case and the conclusion of T.C.'s lawsuit in July 2001.
We agree with Day that "there was no ambiguity with respect to the questions about prior lawsuits in either the juror questionnaire or the voir dire of the jury." Day's brief, at 25. However, because Day offered no testimony from T.C., the trial court was unable to consider any reason for T.C.'s failure to disclose his prior lawsuit.
Having considered the materials submitted by Day in support of its motion for a new trial, as well as Day's arguments in support of its contention that T.C.'s silence resulted in probable prejudice to it, we conclude that Day has not demonstrated that the trial court exceeded the broad scope of its discretion in denying the motion for a new trial insofar as the motion was based on T.C.'s silence.
 II.
Day next contends that "[t]he trial court also erred to reversal [by excluding] *Page 7 
evidence of [Smith's] reckless conduct — his pulling `wheelies'[2] just minutes before the wreck — by limiting the testimony on [Smith's] pre-accident conduct to simple speeding." Day's brief, at 35. We disagree.
A trial court's ruling on the admission or exclusion of evidence will be reversed only if it is shown that the trial court exceeded its discretion in so ruling.
 "Admission of evidence as to the speed or manner of operation of an automobile prior to the time of an accident is a matter for the trial court's discretion. Deese v. White, 294 Ala. 123, 313 So.2d 166
(1975); Coker v. Ryder Truck Lines, 287 Ala. 150, 249 So.2d 810 (1971); Swindall v. Speigner, 283 Ala. 84, 214 So.2d 436 (1968); Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77
(1954); Utility Trailer Works v. Phillips, 249 Ala. 61, 29 So.2d 289 (1946); Whittaker v. Walker, 223 Ala. 167, 135 So. 185 (1931); Davies v. Barnes, 201 Ala. 120, 77 So. 612
(1917). This discretion should be exercised in light of the facts of the case and the probative value of the contested evidence as opposed to its prejudicial effect.
 "As stated in the leading treatise on the law of evidence in Alabama:
 "The courts of this state adhere rather uniformly to the rule that the admissibility of evidence regarding the speed of a motor vehicle before reaching the scene of the accident depends upon the facts of each case and must be left to the sound discretion of the trial court. This discretion, of course, is not without direction. The job for the trial court is to look at the speed or conduct prior to the accident and to determine if there is a high probability that it continued up until the accident. The issue is whether the prior moment of speeding is too remote to permit an inference that substantially the same rate of speed was probably maintained up to the time of the accident in question. . . .'
 "C. Gamble, McElroy's Alabama Evidence (3d ed.1977), § 45.04 (citations omitted; emphasis added)."
Ex parte Houston County, 435 So.2d 1268, 1270
(Ala. 1983). Under the facts of this case, we cannot say that the trial court exceeded the broad scope of its discretion in excluding evidence that Smith was allegedly performing "wheelies" before the accident.
The maximum lawful speed at the location of the accident was 45 miles per hour. One of Day's witnesses, Scott Blankenship, testified that, in his opinion, Smith was traveling approximately 65 to 70 miles per hour as he approached the point where the accident occurred. Although Blankenship had watched Smith operating the motorcycle during the 10 to 15 minutes preceding the accident, and although the trial court did not limit Day's questioning of Blankenship concerning Smith's speed, Day examined Blankenship only as to Smith's speed as he neared the point of impact. Neither Blankenship nor any other witness testified that Smith was "pulling `wheelies'" as he approached the accident scene. Under these circumstances, the trial court, in the exercise of its discretion, was free to conclude that the probative value, if any, of evidence that Smith had been performing "wheelies" before the accident was substantially outweighed by its prejudicial effect. See Rule 403, Ala. R. Evid. ("Although relevant, evidence may be excluded *Page 8 
if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . .").
 III.
Day also argues that it is entitled to a new trial because of what it describes as "the jury's improper consideration of . . . extraneous prejudicial information." Day's brief, at 15. Its argument is without merit.
In support of its motion for a new trial, Day offered affidavits from three jurors. Representative of those affidavits was the affidavit of juror M.L.C., which stated, in pertinent part:
 "The other jurors and I determined an amount to compensate Brian Smith for his damages. We then decided to award Mr. Smith money for attorney fees and income taxes we assumed he would have to pay although we received no evidence of any amounts recoverable for attorney fees and taxes. The other jurors and I did not know what amount Mr. Smith might have to pay for attorney fees and taxes, but based upon information obtained from outside the evidence presented at the trial, we assumed it would be a significant sum and decided to award additional money to pay attorney fees and income taxes we believed Mr. Smith might have to pay. These amounts were combined and included with the amount we decided to award Mr. Smith to compensate him for his injuries to reach our total verdict amount."
According to Day, this testimony reveals "the jury's improper consideration of the extraneous prejudicial information of [Smith's] tax liability and attorney's fees in making its award of damages." Day's brief, at 15.
Rule 606(b), Ala. R. Evid., provides, in pertinent part:
 "[A] juror may not testify in impeachment of the verdict . . . as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."
(Emphasis added.) Rule 606(b) embodies the important "distinction under Alabama law, between `extraneous facts,' the consideration of which by a juror or jurors may be sufficient to impeach a verdict, and the `debates and discussions of the jury,' which are protected from inquiry." Sharrief v.Gerlach, 798 So.2d 646, 652 (Ala. 2001). InSharrief this Court explained that distinction:
 "This Court's cases provide examples of extraneous facts. This Court has determined that it is impermissible for jurors to define terms, particularly legal terms, by using a dictionary or encyclopedia. See Fulton v. Callahan, 621 So.2d 1235
(Ala. 1993); Pearson v. Fomby, 688 So.2d 239
(Ala. 1997). Another example of juror misconduct leading to the introduction of extraneous facts sufficient to impeach a jury verdict is an unauthorized visit by jurors to the scene of an automobile accident, Whitten v. Allstate Ins. Co., 447 So.2d 655 (Ala. 1984), or to the scene of a crime, Dawson v. State, 710 So.2d 472
(Ala. 1997).
 "The problem characteristic in each of these cases is the extraneous nature of *Page 9 
the fact introduced to or considered by the jury. The improper matter someone argues the jury considered must have been obtained by the jury or introduced to it by some process outside the scope of the trial. Otherwise, matters that the jurors bring up in their deliberations are simply not improper under Alabama law, because the law protects debates and discussions of jurors and statements they make while deliberating their decision. CSX Transp. v. Dansby, 659 So.2d 35 (Ala. 1995). This Court has also noted that the debates and discussions of the jury, without regard to their propriety or lack thereof, are not extraneous facts that would provide an exception to the general rule of exclusion of juror affidavits to impeach the verdict. Weekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955)."
798 So.2d at 652-53. See also Bethea v. Springhill Mem'lHosp., 833 So.2d 1, 7-8 (Ala. 2002).
Nothing contained in the affidavits offered by Day indicates that the jury actually considered any extraneous facts. The affidavits provide no evidence indicating that the jury consulted any outside source of information or that any juror was influenced by any outside information. The affidavits merely reflect some of the jurors' discussions, which, "without regard to their propriety or lack thereof, are not extraneous facts that would provide an exception to the general rule of exclusion of juror affidavits to impeach the verdict." Sharrief,798 So.2d at 653. Consequently, the trial court did not err in denying Day's motion for a new trial insofar as that motion was premised on the jury's consideration of tax liability and attorney fees in determining the damages award.[3]
 IV.
As alternative relief, Day argues that this Court should order a "substantial remittitur." Day's brief, at 39. However, in its three-sentence argument concerning the alleged excessiveness of the compensatory damages, Day cites only a single case in support of a general proposition of law and offers no discussion of the nature and extent of Smith's obviously serious injuries. Such an argument is insufficient to invoke our review of the damages.
Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant's brief contain "citations to the cases, statutes, other authorities, and parts of the record relied on." Further, "it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments." State Farm Mut.Auto. Ins. Co. v. Motley, 909 So.2d 806, 822
(Ala. 2005) (citing Ex parte Showers, 812 So.2d 277, 281
(Ala. 2001)). This is so, because "`it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'" Butler v. Town of Argo, 871 So.2d 1, 20
(Ala. 2003) (quoting Dykes v. Lane Trucking, Inc.,652 So.2d 248, 251 (Ala. 1994)).
 V.
Day has failed to demonstrate that it is entitled to a new trial or to a remittitur of the compensatory damages. Consequently, *Page 10 
the judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and SEE, SMITH, and PARKER, JJ., concur.
[1] We have not overlooked Day's assertion that its "trial counsel state[d] in [its] brief in support of the motion for new trial that counsel would have challenged [T.C.] for cause or would have exercised a peremptory strike had trial counsel known of the prior lawsuit." Day's brief, at 21. However, statements in briefs submitted in support of a motion are not evidence to be considered by the trial court. Ex parte Coleman,861 So.2d 1080, 1084 (Ala. 2003).
[2] A "wheelie" is "a maneuver in which a wheeled vehicle (as a bicycle) is momentarily balanced on its rear wheel or wheels."Merriam-Webster's Collegiate Dictionary 1424 (11th ed.2003).
[3] We have not overlooked Clarke-Mobile Counties GasDistrict v. Reeves, 623 So.2d 368 (Ala. 1993), a plurality decision of this Court, upon which Day relies. However, in that case, unlike this case, a juror's affidavit revealed that extraneous facts had been made known to the jury during its deliberations.