*995
On Application for Rehearing

THOMPSON, Presiding Judge.
This court’s opinion of December 7, 2012, is withdrawn, and the following is substituted therefor.
Emily Brackin Terry (“the mother”) appeals from a judgment of the Lawrence Circuit Court (“the trial court”) denying her request to move to South Carolina with the child she had with Adam G. Terry (“the father”).
The record indicates that the mother and the father have never been married to each other. The child was born in May 2007. As the result of a paternity action in the Lawrence Juvenile Court,[1] the mother and the father were awarded joint legal custody of the child, and the mother was awarded primary physical custody, subject to the father’s visitation. The father pays child support.
The mother married Joshua Terry[2] (“Terry”) in June 2011, when he graduated medical school. In his deposition, which was admitted at the evidentiary hearing in this matter, Terry said that when he proposed to the mother in January 2011, he did not know where he would be going to complete his residency program in anesthesiology. He explained that medical-school graduates do not have a choice regarding where they will go to complete their residencies; instead, they are “matched” with a program, and only one program is offered to each medical-school graduate. Completion of a residency program is required to obtain a license to practice medicine. In other words, Terry explained, the “system” tells a medical-school graduate where he or she has to go to take part in a residency program; the medical-school graduate does not make the choice. Terry explained that he applied to attend the residency program at the University of Alabama-Birmingham, and that that program was his first choice, but he was not assigned to that program. On March 15, 2011, Terry learned that he had been “matched” with the Medical University of South Carolina (“MUSC”), in Charleston. When Terry was deposed, he was in the first year of a four-year residency program in anesthesiology at MUSC.
The mother notified the father of her intention to move with the child from Lawrence County to Charleston when she and Terry married. The father agreed that the notice complied with the requirements of the Alabama Parent-Child Relationship Protection Act (“the Act”), § 30-3-160 et seq., Ala.Code 1975. The father timely objected to the proposed move, filed a petition to enjoin the move, and requested a custody modification. In response, the mother filed a counterclaim in which she asked that the father’s visitation schedule be modified in accordance with the trial court’s “out-of-state” visitation schedule. The child was permitted to move to South Carolina with the mother and Terry during the pendency of this action.
At the hearing on the parties’ respective pleadings, the father, who was 27 years old at the time of the hearing, testified that he was single and lived in a house in Trinity, in Lawrence County, that had belonged to his grandparents. The father testified that he was in a relationship with a woman who lived in Mississippi, that he hoped to marry, but that he did not intend to move to Mississippi.
The father worked for Naffco, a business that sells fire engines. His sales *996 territory included north Alabama and all of Mississippi and Tennessee. The father said that he traveled for work and estimated that he stayed out of town overnight between four and six nights a month. The father was also required to travel to Pennsylvania for work a few times each year.
The mother testified that the child, Terry, and she lived in a gated community in a suburb of Charleston. At the time of trial, the child was four years old and attended a day care across the street from where the mother worked as a registered nurse for a gastroenterology center. The mother said she was never required to travel for work and that she was able to be home with the child every evening. She and Terry both described their life in Charleston, saying that they had joined a church there and that the child had made friends in the area. The evidence indicated that the child did not attend church with the father. The mother testified regarding cultural and historical sites the child had visited in Charleston that were not available in Lawrence County, such as a children’s museum, an aquarium, Fort Sumter National Monument, and the USS Yorktown, a World War II aircraft carrier.
The father said that he frequently spoke to the child on the telephone, but he complained that the mother was listening to the conversations by putting the father’s calls on the speakerphone. The mother testified that the child, who was four years old at the time, had learned to put the calls on the speakerphone after the mother allowed the child to talk to the father on the speakerphone as the child took a bath. The mother said that the child’s attention span for a “normal” telephone conversation was “not that long” and that the child would put the father’s calls on the speakerphone while he played. The mother said she did not intend to monitor the father’s conversations with the child, but she had become concerned when she overheard the father tell the child that South Carolina was not the child’s home. The mother said that, because they were living in South Carolina, she believed that South Carolina was the child’s home, and she did not believe the father’s comment was appropriate to tell a four-year-old child.
Much of the testimony involved the parties’ inability to reach an agreement regarding a visitation schedule, who would be required to travel for visitation, and who would be responsible for the costs associated with travel. There has been more than one visitation schedule entered in this matter, and the parties have gone to mediation in an attempt to work out a schedule between them. That effort was unsuccessful. The mother testified that she had discussed visitation issues with her attorney, and she believed that she was abiding by the schedule that was currently in place.
The father testified that he had continued to exercise his visitation after the child moved to South Carolina, and he acknowledged that, in fact, he was spending the same number of days with the child each month as he had before the child moved. The record also indicates that there had been conflict between the mother and the father when meeting to transfer the child, so the transfers have been carried out in public places, such as fast-food restaurants. The mother submitted a proposed visitation schedule that would provide the father with extended visitations around the holidays and during the summer. She also offered to let the father have additional visitations with the child in Charleston if the father visited there. The father proposed a visitation schedule that would require the child to use Thanksgiving Day and Christmas Day as travel days between the parties’ residences. The mother ob *997 jected to that proposal on the basis that it would not be in the child’s best interest.
The father testified that he had taken vacations during the pendency of this litigation, but he had not traveled to South Carolina to see the child. The father said that he went to New Orleans when the University of Alabama played in the National Championship football' game in January 2012, but he did not have a ticket to attend the game. The father also traveled to two away games to see Alabama play football. The mother recalled an instance when the child’s maternal grandmother returned the child after the father’s scheduled weekend visitation because the father had gone out of state to see an Alabama football game. The father said that he also took a vacation to Gulf Shores, although he was aware that the child lived within minutes of a beach in South Carolina.
The mother and Terry are both from Lawrence County and have family in the area. When Terry’s sister married, the' child was in her wedding. The mother, Terry, and the child traveled from South Carolina to Lawrence County on the Friday before the Saturday wedding and returned home the day after the wedding. The father complained that the mother had not allowed a visit during that weekend. The father also complained that the mother had not allowed him to spend time with the child on the two other occasions when she and the child had returned to Alabama for a visit. The mother testified that the father had exercised a lengthy visitation just before one of those trips. She also said that the father had turned down offers totaling five weeks of visitation with the child. Because he had turned down those offers of visitation, the mother said, she did not believe the father should be entitled to visit with the child during her vacations with the child. The mother and Terry testified that, because of their work schedules, they did not have the opportunity to have long vacations in Alabama. Terry said that he and the mother hoped to return to north Alabama when he completed his residency, but, he said, whether he would be able to obtain a job as an anesthesiologist in north Alabama at that time would be dependent on the job market.
The evidence also indicated that the father had, on at least one occasion, refused to meet the mother at a location between Lawrence County and Charleston and that he did not take advantage of the visitation available to him on that occasion. When the father was asked whether he would expect the mother to travel from South Carolina for visitations with the child if the father was awarded custody, the father said he would be willing to drive the child to Georgia every other weekend if necessary. He also said that he did not believe that that much travel would be in the child’s best interest, adding, “I think the best interest of the child is for both parties to live here in Alabama and remain [sic] semblance of a normal family as much as possible.”
The mother testified that she intended to encourage the child to have a relationship with the father. The father said that, after the mother and the child moved to South Carolina, the father had taken the child to a counselor, and he conceded that ' there was no evidence indicating that the child had symptoms of separation anxiety or an attachment disorder.
After the hearing, the trial court found that the mother had failed to meet her burden of showing that the move to Charleston was in the child’s best interest and ordered that the child be returned to Lawrence County. In its findings of fact, the trial court wrote:
*998 “There is little doubt in this Court’s mind that [the mother] has been the primary care giver for this child. However, this move to South Carolina involves a host of factors that affect this child. While the child does not seem to be suffering any negative effects, his father and joint legal custodian is. As the child has yet to begin school, a change of his principal place of residence from Alabama to South Carolina has not impacted him. To a certain degree, the change has not uprooted him although he is now living in an area where there is no support system. Other than his mother and stepfather, [the child’s] closest relatives, including his father, paternal grandparents, maternal grandparents, and step-grandparents, reside in Lawrence County, Alabama.”
(Emphasis added.)
The trial court went on to note the difficulties of implementing a visitation schedule when the parties lived approximately 400 miles from each other. It found that “previous court orders” regarding the father’s visitation rights had not been followed. However, earlier in the judgment, the trial court noted that “[t]he multitude of contempt actions and court orders only add to the confusion of this case,” and it set forth the visitation schedule the parties were to abide by until the child reached the age of five years. In discussing the difficulties involving visitation, the trial court stated: “This Court cannot fathom why this mother would not want her child, that lives some 400 miles away from his father, to have visitation with him when she comes to Lawrence County, other than to be spiteful and hurtful to [the father].”
In denying the mother the opportunity to relocate to South Carolina with the child, the trial court stated: “This Court is fully aware this order will create a hardship on [the mother]. However, it is a hardship partially of her own creation.” The trial court went on to point out that, before she married Terry, the mother knew of the “relocation language” set forth in the original visitation schedule that had resulted from the paternity action and knew that she might be denied the opportunity to relocate with the child when the father filed his objection to the move. The trial court also determined that the father’s request for a change in custody was moot, saying that it “assume[d] the mother will return with the minor child.” The mother appealed.
The mother argues that, in denying her request to relocate with the child, the trial court made findings that were plainly and palpably wrong, and she asserts that it improperly applied the presumption found in § 30-3-169.4, Ala.Code 1975, that a change in a child’s principal residence is not in the child’s best interest.
A trial court’s judgment based on ore tenus evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ. App.1995). However, when the question presented on appeal is whether the trial court correctly applied the law, the ore tenus rule has no application. Ex parte Perkins, 646 So.2d 46 (Ala.1994).
Section 30-3-169.4 provides:
“In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in *999 the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party.”
In Clements v. Clements, 906 So.2d 952, 957 (Ala.Civ.App.2005), this court wrote of the presumption:
“Section 30-3-169.4 places the initial burden of proof on the party seeking the change in principal residence. If the party seeking the change in principal residence meets his or her burden of proving that the change in residence is in the child’s best interest, the burden then shifts to the nonrelocating party to demonstrate how the change in residence is not in the child’s hest interest. See § 30-3-169.4, Ala.Code 1975.”
The facts in Clements are similar to those in this case. The mother and the father in Clements lived in Autauga County when they divorced. The mother was awarded primary physical custody of their child. A year after the divorce, the mother married a physician who lived in Som-ers, New York, and she notified the father that she intended to move to New York with the child. The father objected, arguing, among other things, that the distance between him and the child would prohibit him from exercising visitation as often as he would like and that he was concerned he would have “no relationship” with the child if the child moved to New York. Id at 954.
In affirming the trial court’s judgment allowing the mother to relocate with the child, this court noted:
“The mother presented evidence indicating that she was the child’s primary caregiver; that she supported the furtherance of the child’s education; and that the move to New York would offer the child more cultural opportunities.
Thus, under § 30-3-169.4 the burden shifted to the father to demonstrate that a change in principal residence is not in the best interest of the child.”
Id. at 957.
In this case, too, the mother presented evidence indicating that she had always been the child’s primary caregiver. The mother testified that she worked across the street from the child’s day care and that she was home with the child every night. Like the child in Clements, the child in this case had not yet begun school, but the mother testified regarding the cultural opportunities the child had in Charleston that were not available in Lawrence County. The mother was married and her husband was taking an active role in assisting her with the child., There is no evidence indicating that the mother wished to move to South Carolina merely to stifle the relationship between the father and the child. The undisputed evidence indicated that the move was required for Terry to take part in a residency program. Without completing the residency program, Terry would not be able to practice medicine. We conclude that the mother presented sufficient evidence to support a finding that the relocation was in the child’s best interest. Therefore, pursuant to § 30-3-169.4, the burden shifted to the father to demonstrate that the relocation was not in the child’s best interest. The evidence indicated that the father is still .single and must frequently travel out of state for work, and he acknowledged that he spends four to six nights a month away from home. Additionally, the father is in a serious relationship with a woman who lives out of state. As the father and the trial court both acknowledged, there is no evidence indicating that the child has suffered any adverse effects from the move to South Carolina. The father made the statement that the mother and the child *1000 should have to remain in Lawrence County so they could “remain [sic] semblance of a normal family as much as possible.” In fact, the mother and the father were never married, and the parties have never lived together with or without the child.
In its judgment, the trial court admonished the mother for not providing time for the child to visit the father when the mother and the child returned to Lawrence County for a visit. However, the father acknowledged that, since the child had moved to South Carolina, he was seeing the child at least the same number of days as he had when the child lived in Lawrence County, and he talks to the child on the telephone five or six nights a week. The evidence indicated that Terry has only four days off a month. The mother testified that she and Terry chose to travel to Lawrence County occasionally to visit their families and have the child spend time with his extended maternal family; she testified that she wanted to do so without having to allocate time for the child to spend with the father beyond what is set forth in the visitation schedule. Nonetheless, the trial court’s judgment appears to penalize the mother for failing to provide the father with additional visitation time when she returns to Lawrence County for a visit. However, the father is free to vacation where he likes.
The trial court also stated that the situation the mother now finds herself in — i.e., facing a potential change of custody — is’ “partially of her own creation.” In denying the mother the opportunity to relocate with the child, the trial court explicitly stated that it “assumed” the mother would return to Lawrence County, and it “advised” the father that, if she did not, “he may file additional pleadings” regarding the custody of the child. Although visitation becomes more difficult when one parent relocates to a different area, there are viable solutions available to the parties without dismantling a family. In fact, the record indicates that the Lawrence Circuit Court has a standard “out-of-state” visitation schedule. The mother also agreed to provide reasonable visitation opportunities between the father and the child.
Based on the record before us, we conclude that, after the mother demonstrated that relocating the child to Charleston with the mother was in the child’s best interest, the father did not meet his burden of demonstrating that the move was not in the child’s best interest. Thus, the evidence does not support the trial court’s judgment, and the trial court abused its discretion in refusing to allow the mother to relocate to South Carolina with the child.
On rehearing, the father contends that, in our opinion on original submission, by instructing the trial court to enter a judgment consistent with this opinion, this court “failfed] to recognize the procedural posture of the case.” The father asserts that the judgment in this matter was entered before he had presented his case-in-chief. Therefore, he says, rather than having the trial court enter a judgment in favor of the mother, the cause should be remanded “for presentation of [the fa-therj’s case in chief.”
This matter came before the trial, court on the father’s petition objecting to the child’s proposed move. At the outset of the hearing, the trial judge said that the issues pending before the court included “the issue of the relocation matter of the child’s residence. There has also been filed a modification of custody by Adam Terry and there are also some various contempt charges that have been filed.” The trial judge then said that, because the mother had the burden of rebutting the presumption that the relocation was not in the child’s best interest, “we will proceed *1001 first with her testimony on that issue.” The record indicates that the father was the first witness to testify in this matter, but the direct examination was conducted by the mother’s attorney. At the close of the direct examination of the father, the father’s attorney stated that he reserved his questioning of the father “until we put on our case.”
At the close of the hearing, a recess was taken. When the hearing resumed, the parties’ attorneys and the trial judge had the following conversation:
“THE COURT: We just took a short break and the Court spoke with the attorneys. Is there anything else from you, [the mother’s attorney], at this time?
“[THE MOTHER’S ATTORNEY]: Not on this issue, Judge.
“THE COURT: Okay. And [the father’s attorney], understanding there are other issues, do you have anything at the present time?
“[THE FATHER’S ATTORNEY]: Not at this time, Judge.
“THE COURT: Okay. The question before this Court first is there is a presumption in the law that a parent is not to relocate outside of the State or more than 90 miles.[3] I have to rule on that presumption before I can look any further at the other issues.
“Therefore, I’m going to have to take some things under advisement, I’m going to have to look at the testimony. I’m going to have to go into the code and look up some case law. So until that time, I’m going to issue an order that sets forth some visitation with [the father]. I will do that in the next day or so as quickly as I can. And the parties are to abide by that order.
“Once I issue my ruling, we may have the need for subsequent hearings or may not. So we will go forward at that point.”
In his brief on rehearing, the father asserts that the above-quoted statement indicates that “the trial court recognized that [the mother] had to carry her initial burden of proof before [the father] would be required to present his case against the move.” (Emphasis in original.) Therefore, he says, because the trial court entered a judgment determining that the mother had failed to carry her initial burden, the cause must now be remanded for the father to present his case-in-chief. We disagree.
The hearing was held on the father’s petition objecting to the child’s relocation. As indicated, the father chose not to put on any evidence of his own at that hearing. The trial court entered a judgment on the issue of relocation. This court reviewed the record and determined that the evidence did not support the trial court’s finding that the mother had failed to meet her burden of rebutting the presumption that the move was not in the child’s best interest and that the father had failed to demonstrate that that move was not in the child’s best interest.
*1002 The father has not cited any authority that would allow him to reopen the case to present further evidence in support of his petition. It is well established that
“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 923 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala. Crim.App.2002). ‘This is so, because “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” ’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008).
If the father wished to rebut the mother’s evidence, the time to do so was at the hearing on the issue of the child’s relocation. See, e.g., Bates v. Bates, 103 So.3d 836 (Ala.Civ.App.2012). As the record clearly demonstrates, he made the decision not to do so. Accordingly, we conclude that the father knowingly waived his right to present further evidence on the issue of the child’s relocation.
Because we conclude that the trial court erred in denying the mother’s request to relocate, we pretermit consideration of the other issues the mother has raised on appeal. For the reasons set forth above, the judgment of the trial court is reversed, and the cause is remanded to the trial court for the entry of a judgment consistent with this opinion.
APPLICATION FOR REHEARING OVERRULED; OPINION OF DECEMBER 7, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ„ concur.

. We are unable to determine from the record who filed the paternity action.

. Although the father and the mother’s husband have the same last name, there is no indication in the record that they are related.

3. Section 30-3-169.4 provides that “there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child.’’ We also note that § 30-3-162(b), Ala.Code 1975, provides that § 30-3-169.4, among others,
“shall not apply to a change of principal residence of a child to a residence which is 60 miles or less from the residence of a non-relocating parent who is entitled to custody of or visitation with the child or if the change or proposed change results in the child residing nearer to the non-relocating parent than before the change or proposed change, unless such change in the principal residence of a child results in the child living in a different state."